I respectfully submit that the Immigration Court erred in denying Mr. Chaides' application for suspension of deportation in this case. Through no fault of his own, Mr. Chaides never learned that he was placed in deportation proceedings back in 1994. He was never served with an order to show cause. No responsible adult known to Mr. Chaides was ever served with an order to show cause. As a result, he didn't show up for the hearing. The case was closed. Six years later, Mr. Chaides picked up. The case is reopened. At a May 2000 hearing, the INS takes the position that he was, in fact, properly served under the statute in accordance with GRAHAVA, the Board's decision interpreting the statute, in 1994. The basis for that assertion was the receipt signed, the certified mail receipt. The immigration judge, Judge Yamaguchi, who presided in May 2000, told service that it didn't have a leg to stand on, that all Mr. Chaides would have to do in this case was to file a declaration saying he didn't know the person that signed the receipt. He never received an order to show cause. And the ultimate question here is, is it not, is what does the regulation or the statute mean by a responsible person? In other words, there was a person, some person. The Postal Service regulations, if that's what we're looking at, seem to say as long as it's an adult and maybe even if it's just the manager of the apartment house, that's a responsible person. Is that a responsible person or is it somebody who's responsible to him that he knows or what? How do we know what a responsible person is? Well, frankly, Your Honor, I think it's a little ambiguous. GRAHAVA doesn't say what a responsible person is. No regulations have been cited to the court by the government as to what responsible service is. There are a couple of cases out of the Seventh Circuit that give ‑‑ flesh it out a little bit more. It may ‑‑ The statute doesn't say a responsible person. The statute does not say a responsible person. The statute says to the alien, to the alien or to his attorney. GRAHAVA comes along and the board puts a gloss on the statute by saying responsible person. It doesn't explain what responsible person is. The only guidance the court has, I think, are a couple of cases out of the Seventh Circuit and also ‑‑ So a gloss on responsible person, that just means somebody who is likely to give it to the ultimate recipient? The manager of the building is likely to hand it over to the person or a child, even a child or someone in the family apartment. Right, right. And that may be sufficient to make out a prima facie case of service under the statute under GRAHAVA. But the question here is what does the petitioner have to do in order to rebut? And ultimately this case is about the failure of the immigration court to properly consider rebuttal evidence. That's what the case is about. It's not about whether or not there is ‑‑ the court should presume that someone who signs for a piece of certified mail is a presumptively responsible person. It's what does the petitioner have to do in order to rebut that presumption? Because ordinarily when you deal with certified mail, that eliminates the need for presumptions if the person themselves signs for it. If he had signed for it and then said, oh, I was, you know, sleepwalking, I didn't get it, you'd say forget it. Correct. All right. So is essentially what you're saying that because nobody contends that he himself got it, then we start dealing in evidentiary presumptions. Is that basically your argument? Essentially. I mean, I think you can look at it one of two ways. You can call it a presumption that one who signs for a piece of certified mail is a responsible person. You could say ‑‑ you could also state it another way, say that when the government comes before an immigration court with a piece of ‑‑ with a certified mail return receipt signed, that presumptively they've met their obligation to show that service was proper here. But the petitioner still has to have an opportunity to rebut that prima facie case of service, whether it's a prima facie case, whether it's a presumption. Call it what you will. He still must have an opportunity to rebut the government's case that service was effective here. Well, what do we make of the fact that this service didn't go ahead and ask to have an order of deportation? Rather, they closed it administratively for failure to serve. Well, under the law that was applicable at the time, Your Honor, service ‑‑ the immigration court was in fact required ‑‑ That's the way I read the regulation. was required to proceed to order Mr. Chides deported in absentia. His attorney in 2000 issued a FOIA request, received notes back from service which indicated that at the very least, the attorney responsible for the case in 1994 did not believe that service was proper. That evidence was presented to Judge DiCostanza, the immigration judge that ultimately applied the stop time rule here, and he disregarded it. Now, I think ultimately it's a fairness point. I don't think you get to ignore the immigration services on records in this way. So I think it comes back to Judge DiCostanza's failure to properly consider the rebuttal evidence, the primary piece of course a declaration when he applied the stop time rule here. So even if the government were right that it's appropriate to presume that someone who signs for a piece of certified mail is a responsible person, the immigration court still has to give an immigrant in deportation proceedings an opportunity to present rebuttal evidence. And there are some cases that this court has on this case. The same for SALTA v. INS. SALTA v. INS is a removal statute case. In that case also, the immigration court was reversed for failing to consider rebuttal evidence, a declaration.  technical question in terms of how we handle this case. The I.J. was sort of in another ballpark. He says these materials indicate to the courts that the order to show cause was served in the response of a last known address, and that, therefore, a matter of grajalva applies to the proceedings. And that's just wrong, because this was an instance in which there did have to be certified mail. And so he never even got to the responsible person issue at all. So do we need to remand? I mean, can we just grant this, or do we need to say, look, you just didn't even ask the right question, and remand? I think Judge Yamaguchi, who's the presiding immigration judge at the May 2000 hearing, got the law exactly right. There's a declaration on file that's unrebutted and that can't be rebutted that Mr. Chides does not know who signed for the order to But he isn't the person who made the decision. That was just sort of loose language. The only decision we have by an I.J. is simply kind of in the wrong ballpark. It just isn't about the right thing. Okay. So, therefore, can we decide anything, or do we need to remand it? I think under the Seventh Circuit's decision in Adeyemo v. INS, there's no way that the government can make out that service was proper under the statute and grajalva in this case. All it has is the return receipt signed by a person that is unknown to Mr. Chides and that is insufficient under the law. So what we're looking for is a finding that the stop-time rule should not apply in this case. Mr. Chides was served 11 years after he entered the country in 2001, and that he should be permitted to proceed on the merits of his application for relief, which is a very strong one, I might add. He's been in the country almost 20 years. He's the father of two United States citizen children. Do you want to, sir, reserve some time? I do.  Thank you, Your Honor. May it please the Court. My name is Anne Tumaya. I represent the United States. This case involves the agency's interpretation of the immigration statute and boils down to an evidentiary dispute. But it doesn't really. This is what bothers me.    It doesn't really. It doesn't really. It doesn't really. The IJ said the materials indicated to the court that the order to show cause was served under Respondent's last known address and, therefore, Madara-Grijalva applies it. Yes, Your Honor. He seemed to be applying the rules that apply to notices to appear, but not on a C, does that not apply? No, Your Honor. Madara-Grijalva does construe service of orders to show cause as well. And under Madara-Grijalva. But sending it to the last known address is not sufficient for orders to show cause because the statute requires that it be sent certified mail, that it either be in person or by certified mail. So sending it, just sending it by mail to the last known address for that is not sufficient. He seemed to be looking at the wrong part of the opinion. Your Honor, in citing to Madara-Grijalva, if we take a look at Madara-Grijalva, which actually upheld Madara-Wete under the amended provisions of the immigration statute, Madara-Wete said specifically that in order to be able to charge proper service of an order to show cause, there had to be evidence of a return, a certified mail receipt that is signed and returned. And, therefore, in applying Madara-Grijalva, the immigration judge correctly applied, construed the statute and interpreted it as contemplating proper service of a charging document when there is evidence not just of the charging document being sent. Did he have an obligation to consider rebutting evidence? Your Honor, he did. There was a motion to terminate that was submitted by the Petitioner, and the Petitioner submitted an affidavit and an unrebutted affidavit. Your Honor, an affidavit that simply stated that he did not know who this person who signed for both the order to show cause and the hearing notice was. Evidence that he never got. I'm sorry? And that he never received. And that he never received. But, Your Honor, the immigration statute, as construed by the agency, contemplates that if service is not practicable, then if the charging document is served upon a person who is a responsible party, that would be sufficient. But there has to be evidence that the charging document was served at the last known address and that the evidence, the certified mail receipt, was signed and returned. The immigration judge. I bet that it was by a responsible party. By a responsible. Yes, Your Honor. But there's no evidence that it was by a responsible party. Your Honor, there is a presumption that is applied. The case here in terms of the responsible party is not in the statute. No, Your Honor. All right. It says certified mail to the person. Yes, Your Honor. There's a regulation that says responsible party. There's no definition of responsible party. Now you're telling me that there's also a presumption that it's a responsible party. Where do we get that from? Your Honor, there's a couple of different steps in order to respond to Your Honor's question. First of all, as this court has construed in other cases where it does apply hearing notices, it has recognized that the charging document in terms of a presumption does arise as a matter more of necessity and public policy. The government as well as the court relies on the reliability and the fact that government officers, including the postal service, discharges their duties. And based on that, there can be a presumption. It doesn't matter whether or not there is a certified mail delivery or regular mail delivery. And, in fact, certified mail delivery warrants a strong presumption. So the presumption has to apply in that regard. And when we consider the question of, well, if there's a problem with the internal household workings, then it's a matter of, well, who's in a better position to state that and rebut it, but the petitioner, not the government. Is there anything in the evidence that shows us what kind of a dwelling this was? No, Your Honor. And that's part of the issue as far as the petitioner's responsibility to rebut the presumption that is raised once there's evidence. There's actually – there has to be evidence that there was delivery. Well, he did rebut it. He put it in an affidavit saying, I never got it. No, Your Honor. He did not. He said that he never got it, but he never rebutted the evidence that there was a responsible party that received it. Well, he said he didn't know this. Levia, Nevarez. Your Honor, evidence that someone doesn't know a person does not constitute evidence that proper service or that there was not delivery. Here, this case – well, Your Honor, if we can – It seems to me totally inconsistent with the notion of a responsible person. You usually think of somebody who's – when they serve certified mail, they go to the door, and somebody who answers the door of an apartment is someone who lives there, and it's a reasonable presumption, or they go to the managing agent. But he says he doesn't know. This person wasn't, as far as I could tell, a managing agent or anything. Why should I presume it's a responsible person? Your Honor, because he does not state – he states simply that he doesn't know this person. But we don't know what was going on in that household. The evidence only shows that, well, this person did actually, in fact, live at this residence. We don't even know that, do we? Your Honor, she – the evidence shows that on two separate occasions, this individual, Ms. Nevarez, signed – But she could have been the person sitting in the front door, the manager. She didn't necessarily live there. But at a minimum, she was still a party who was at this address on those separate occasions. The question is really a matter of whether there was delivery, and it's not so much a question of whether the responsible party lived at the address but whether or not she could receive it. What about the fact that the INS at the time did not go forward with the deportation, and it was mandatory that they do so if service was proper? So at that point, it appears everybody understood that service was not proper. Your Honor, service – a proceeding is not to go on in absentia unless there is clear and unequivocal and convincing evidence that the charging document was served. And in this case, all we know is that the immigration judge ordered administrative closure based on the failure to appear. And prior to that time and in the record of proceedings, it appears that the service did not actually submit evidence showing delivery of the charging document until after the proceedings were reopened. So therefore – Can I ask how we know that? Your Honor, at that time, then, if there was clear, unequivocal and convincing evidence presented by the service that the Petitioner was properly served with the charging document, then the immigration would have – the immigration judge would have to proceed. That's true. But you're now making – so there are two possibilities. One is they did present the evidence, and it was understood that it was insufficient. And the other – or they didn't even present it because they knew it was insufficient. And the other is you're now saying, well, they just didn't present anything. But I thought that if it was adequate service, they had to go forward. Your Honor, the service – again, the only requirement to go forward that requires the immigration judge to go forward is that there has to first be this evidence. And what the immigration judge did was to administrative closure. Because the INS is not required to go forward. They could just sit on the evidence. I thought the statute directs the INS to go forward. Your Honor, the statute directs that the immigration judge has to proceed with the case in absentia. And so it's – But the INS doesn't. The INS can make a choice. The service has a responsibility to try to establish that in order to move forward with it in absentia. But it can also request administrative closure. It can request other matters. In this case, then, it opted to proceed by asking to administratively close the matter. At least the immigration judge determined that there wasn't enough evidence here to make any kind of assertion of whether or not there was clear, unequivocal, unconvincing evidence. What you're saying is that the statute says that the alien shall be ordered to report if the service is established by clear, unequivocal, unconvincing evidence, the written notice was so provided, but the service doesn't have to present that evidence, even if it hasn't. That may be right, but that's what you're saying. That seems odd. Your Honor, I think – I'm not sure if I am conveying myself clearly, but the statute does only provide that the immigration judge has to proceed in absentia if there's clear, unequivocal, unconvincing evidence. There is a request to present it. But are you saying the service has a choice at that point, that even if it has the evidence, it doesn't have to present it? Your Honor, there is that choice. Yes, Your Honor. Because what happens is the immigration judge is bound by statute to proceed in absentia only if the evidence that is presented he deems to be clear, unequivocal, unconvincing. The immigration service does have responsibility. However, if it doesn't have that evidence or if it needs time to seek additional evidence, it is within the judge's discretion. But in this case, that certainly wouldn't help you because it had no more evidence now than it did then. None at all. In fact, less, because now we have the petitioner saying that he didn't get it. So they certainly don't have more evidence now than they did then. They never came up with anything else. So that can't be it. Your Honor, they did submit additional evidence afterwards because the problem here, and may I proceed? I see that I am out of time. But I would like to respond to that question and conclude. Yes. In this particular case, we don't have an understanding in the record as to why the proceeding was administratively closed other than the fact that the immigration judge decided that in his discretion he wanted to administratively close the matter because the petitioner did not appear for whatever reason. But we can at least presume that at that time there was not yet evidence presented regarding clear, unequivocal, convincing evidence of the proper service. But what was added later? Nothing. I don't think there can be a presumption either way at that point. Your Honor, the presumption did not arise and apply until the service actually did present clear, unequivocal and convincing evidence. This is what I'm asking. First of all, we also have this notation on the, I think it was the INS officer's form where he said no service. So if we're going to presume anything, it's that they thought there was no service. But additionally, what was known later that wasn't known then? Your Honor, two responses to that. First of all, the immigration judge deemed that the notes taken only showed not the case, and that was that he, that there may not have been proper service, that there was a question by the immigration judge whether, as to whether there may have been service, but that ultimately the order shows that the immigration judge only decided to proceed to administratively close the matter because of petitioner's failure  Okay, but I'm still asking you, what was known in the later proceedings that wasn't known in the earlier proceedings that would have led the INS to not have clear and convincing evidence then, but it does now? Your Honor, that was my second point. My second point was that the service apparently needed the time to then, and I cannot explain why it took the service that long, but the service did later provide evidence, first of all, of the two pieces of evidence as far as the last known address, that being the asylum application that was submitted by the petitioner a few, six months before the charging document was served, as well as the request for work authorization. That makes no sense at all. They were showing up for a hearing at that point. They must have had those documents with them, or they thought they were having a hearing that day, so they didn't have their application with them? Your Honor, unfortunately, the record does not provide information as to why the Immigration Service did not present that evidence at that time, but what we do know is that the Immigration Service did eventually produce the evidence that showed that delivery was made at the last known address, at the address that petitioner provided, at the address where he has never denied he lived at during the time that the order to show cause and the hearing notice were served, as well as at an address where the same individual, who on two separate occasions, was able to sign for receipt of it. And once we have that information, we reach the presumption. And then based on that, we take a look at his affidavit, which does not rebut the presumption because it merely states that he doesn't know the person. It does not reveal the internal household issues that may arise. I know all this. Thank you. Okay. Thank you. Yes, Your Honor. Thank you. Did he have a lawyer at the time? Yes, Your Honor. He was represented by an attorney. The time being back at the period? Oh, I'm sorry. When he did not appear? Yes. When he did not appear, then at that time, the asylum application doesn't seem to indicate that he had an attorney, so there is nothing in the record that indicates either way what the response would be. I'm not as knowledgeable about immigration laws as my colleagues here. As I understand it, had they — if they didn't choose this discretionary route, self-created, of administrative closure, they would have been required to send — complete the process with an order with another opportunity for a certified mail, right? Am I wrong? How would it have worked if they — if he had gone forward, the administrative judge, in 1994, I guess it was? If the immigration judge has deemed in his discretion that, no, you need to present the evidence now, I'm not going to give you a continuance or any other opportunities, then you — No, no, no. When they — when it came back, the certified mail, at the time they administratively closed it, if they had gone forward to complete the process, what would have happened? Your Honor, at that time, if they had gone forward, it depends upon whether the immigration judge had determined that there was sufficient evidence. Based on this, since the evidence produced by the service was not — I'm just trying to understand the process. Suppose he determined there was. What would have happened then? If there was evidence? Yes. But he's really asking you if an order of deportation had been entered. Yes, Your Honor. What then? Did that have to be served on the individual? If the order of deportation had been — yes, it would have had to have been served on the alien. And then he would have an opportunity to come in and say, I never was served. He would then be able to — he would file a motion to reopen the in absentia proceedings and state that I was never served, and then provide the same affidavit, or preferably an affidavit that actually satisfied. So your administrative process deprived him of, which may be perfectly reasonable, but a second chance to find out the fact that he had been served. No, Your Honor, because he actually did take in a different way, but he still provided the information to rebut, and the immigration judge, consistent with the law, had stated, well, you need to then show that you never received this and that you don't know it.  Thank you. Thank you, counsel. We'll give you a few extra minutes. I say three, in addition to what you have. Okay? I don't think you need to. There's nothing in the record to support the government's assertion that the immigration judge considered Mr. Chileta's declaration. It was not even marked as an exhibit. The opposition to the motion to terminate was marked as an exhibit, but the motion to terminate attaching the declaration was not even marked as an exhibit. And just to be clear, the reason all this ultimately matters is because it determines what the date is for his eligibility for relief. Yes. It matters because the subprime rule would bar his application. Right. Because if that was a — if that's when the proceedings began, then he's not eligible. But if they began in 2000, then he is eligible. Correct, Your Honor. Okay. All right. With that, I'll rest. Thank you very much. Thank you. Thank you, counsel, for a useful argument.
judges: B.fletcher, Berzon, Trager